IN THE UNITED STATES

DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.  92-571-CR- DTKH

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ANDRES CAMPILLO

        Defendant

DEFENDANT'S MOTION FOR MODIFICATION OR REDUCTION OF
SENTENCE PURSUANT TO 18 U.S.C. 3582 (c)(2) AND SENTENCING
GUIDELINE AMENDMENT 782

The Defendant, Andres Campillo, by and through his undersigned counsel, requests a modification/reduction of his sentence pursuant to 18 U.S.C. 3582 (c)(2) and amendment 782 to the Federal Sentencing Guidelines. In support thereof the Defendant states:

1. On April 30th, 2014, the US. Sentencing Commission voted to lower the drug quantity table by two levels, lowering drug sentences imposed after

1

November 1st, 2014.  On July 18th, 2014, the commission voted unanimously to give amendment 782 retroactive effect, making it applicable to all offenders currently serving time for federal drug offenses.

2. Although Mr. Campillo's motion for modification/reduction of his sentence is timely filed at the present time, no eligible prisoners are to be granted relief prior to November 1st, 2015, in order that the Courts and District Probation Offices can ready themselves for the anticipated thousands of motions to be filed, as well as to build up their respective reentry programs.

3. A lengthy dissertation of the history of amendment 782 is unnecessary. Suffice it to say, the amendment was the result of a realization of the draconian nature of many drug sentences as well as the burden placed upon the system by the overwhelming number of federal prisoners currently serving time on these sentences, many of whom, like Mr. Campillo, are elderly with severe medical problems.

4. Mr. Campillo will particularize this motion to <u>his</u> situation and present to this Court the specific relevant considerations militating in favor of the relief requested herein in light of 18 U.S.C. 3553 (a)(2).

5. Mr. Campillo was sentenced on February 13th, 1996, to concurrent terms of 292 months imprisonment for conspiracy to possess and posession with intent to distribute cocaine. He received a consecutive 60 months sentence

2

for possessing a firearm in the commission of a drug related offense.  Thus, Mr. Campillo's total term of imprisonment, as it now stands, is 352 months. Counting the time Mr. Campillo was pretrial detained, as of the filing of this motion he has served in excess of 20 years imprisonment on this case.

6. Perhaps the best way to begin this motion is with a review of what happened at Mr. Campillo's original sentencing in February, 1996.  At Mr. Campillo's sentencing, defense counsel made a lengthy argument that Mr. Campillo, who was 48 years old at the time, should be sentenced to no more than the mandatory minimum 15 years, which would have been a downward departure from the applicable sentencing guidelines.  As part of his allocution, defense counsel brought to the attention of the Court Mr. Campillo's family circumstances, particularly his "special needs" son Christopher, as well as Mr. Campillo's other close family and community ties.  Defense counsel argued "he is of an age where any incarceration at the statutory minimum would essentially insure that of harsh punishment" (sentencing transcript at page 40 , attached hereto as Exhibit "A").

7. Mr. Campillo's sentencing predated the opinion of the United States Supreme Court in United States v. Booker, 125 S. Ct. 738, 767 (2005) which held that the federal sentencing guidelines were no longer mandatory, but

were advisory and to be used in conjunction with all of the other sentencing factors set forth in 18 U.S.C. 3553 (a)(2).

8. Mr. Campillo's sentencing Judge, the Honorable Wilkie K. Ferguson, was sympathetic to the arguments of defense counsel, and, as the sentencing transcript clearly reflects, spent several minutes on the bench reviewing case law presented to him by defense counsel which might provide a legal basis for a downward departure.  In the end, Judge Ferguson ruled that he was constrained by the mandatory nature of the guidelines, and that there was no legal basis for a downward departure. Judge Ferguson sentenced Mr. Campillo to the <u>low end</u> of his guidelines, stating that "it's severe enough" (Exhibit "A" at page 48).

9. Unfortunately, Judge Ferguson has passed.  No one will ever know the answer to the question as to what he may have sentenced Mr. Campillo had Mr. Campillo's sentencing been post <u>Booker</u> and his hands not tied by the mandatory nature of the guidelines at that time.  What we do know for sure is that Judge Ferguson, a well seasoned, veteran of both the State and Federal bench, being intimately familiar with all of the facts and circumstances of this case and the Defendant's personal characteristics, wished the Defendant to be sentenced at the <u>low end</u> of his applicable

guidelines range.  There is nothing in this record to suggest that would have changed had the applicable guidelines been lower.

10. Of course, this Court must now make its own independent determination as to whether, considering the factors enunciated in 18 U.S.C. 3553 (2)(a), Mr. Campillo's sentence on his drug counts should be reduced to the low end of his new applicable guidelines, 235 months imprisonment.

11. Obviously, the crimes for which Mr. Campillo was convicted were serious and were rightfully prosecuted with all of the vigor the government could bring to bear upon his case.  The amount of cocaine involved and circumstances of the case are precisely what led to such high guidelines to begin with, despite Mr. Campillo having a category one criminal history. Unfortunately, Mr. Campillo cannot turn back the clock and undo his criminal conduct.  He has, however, suffered immeasurably for it every day for the past 20 years and continues to do so.

12. As previously mentioned, Mr. Campillo was 48 years old at the time of his sentencing.  His incarceration has taken a deep toll on his health and it would not be hyperbolic to state that if the relief sought herein is not granted it is doubtful he will ever walk out of prison alive.

13. Undersigned counsel has recently received and reviewed thousands of pages of Mr. Campillo's medical records from the Bureau of Prisons (BOP).

These records reveal, among other things, the following. Mr. Campillo, who is currently incarcerated at the FCI Miami has had upwards of ten admissions to local hospitals within the past 3 years alone as follows:

a) October 4th, 2011-Larkin Hospital

b) November 4th, 2011- Baptist Hospital

c) May 31st, 2012 – Larkin Hospital

d) August 12th, 2012 – Larkin Hospital

e) December 19th, 2012 – Larkin Hospital

f) October 10th, 2013 – Jackson Hospital E.R.

g) November 7th, 2013 – Larkin Hospital

h) December 13th, 2013 – Larkin Hospital

i) January 8th, 2014 – University of Miami Hospital

j) March 25th, 2014 – Larkin Hospital. (See composite Exhibit "B")

14. Attached hereto as Exhibit "C" is a recent printout of Mr. Campillo's current health problems from the BOP.  This printout is four pages long and, among other problems, lists the following medical conditions with which Mr. Campillo is struggling:

a) Congestive heart failure

b) Renal failure

c) Chronic obstructive asthma

6

d) Cardiovascular disease

e) Acute bronchitis

f) Hypertension

g) Morbid obesity

h) Gout

i) Respiratory disease

j) Bacterial infections

k) Hernia

l) Fractured shoulder

m) Bipolar disorder.

All of these conditions, and more, have been diagnosed within the past 4 years alone. (It should also be noticed that several years ago Mr. Campillo lost a finger when a prison guard slammed a door on his hand).

15. Attached hereto as Exhibit "D" is a list of active prescriptions on file with the BOP for Mr. Campillo for the past year alone.  This list is twelve pages long and lists upwards of one hundred prescription medications.  Neither undersigned counsel nor the Court are physicians.  One does not need to be a physician, however, to realize that Mr. Campillo is suffering in prison on a daily basis and that, given the current state of his health, he presents no risk

to the public should his sentence be reduced so he can live out his remaining days at home with family and friends.

16. Likewise, neither undersigned counsel nor the Court are accountants or in the business of budgeting. One does not need to be an accountant, however, to realize the incredible financial burden Mr. Campillo has already become to the tax payers of this country and will continue to be if his sentence is not reduced. If Mr. Campillo is released to his family and friends it is they who will incur all of the medical expenses for Mr. Campillo that are currently being paid for by the taxpayers.

17. In May, 2004, the United States Sentencing Commission issued its Report on the Recidivism of Federal Guideline Offenders. Among the factors looked at and reported upon were the following:

a) Age – the Commission found that among offenders under the age of 21, the recidivism rate was 35.5 percent. Offenders released over the age of 50 had a recidivism rate of 9.5 percent. (In May, 2013, the Florida Department of Corrections Prison Recidivism Report., produced annually by the Bureau of Research and Data Analysis within the Florida Department of Corrections, also confirmed that older inmates are less likely to reoffend). Mr. Campillo, if granted the relief requested herein,

8

will be almost 70 years old upon his release, provided he lives to see that day.

b) Length of sentence- as a corollary to age, the commission found that prisoners serving longer sentences have lower recidivism rates.  Mr. Campillo has already served in excess of 20 years in prison.

c) Educational attainment – the commission found that the higher the educational progress made by the inmate while incarcerated, the lower the rate of recidivism.  In the case of Mr. Campillo, an inspection of his most recent BOP Program review, dated September, 2014, indicates that while incarcerated Mr. Campillo obtained his GED.  In the last few years alone, despite his poor health and numerous hospitalizations, Mr. Campillo has, among others, completed the following educational classes:

2014-  a) Small business

b) Astronomy

c) World of Business

d) Understanding the Human Body

2013-  a) Business World

b) Money Smart Course

2012 -    Electronic law library training

2011-    Aquaculture

2010-   Health and Nutrition

2008-   Pre release anger management

Pre 2008- a) Investing

b) Spanish anthropology

c) Basic communication concepts

d) Advanced Typing. (See Exhibit "E")

18.  Mr. Campillo does not wish to mislead this Court and is sure that as part of this process both the United States Attorney's Office and Probation will look at his disciplinary record while in BOP custody.

19. Upon his initial commitment to the BOP Mr. Campillo had numerous "shots" and placements in the special housing unit. (SHU). These "shots" and placements in the SHU occurred early on in his incarceration, while Mr. Campillo was being moved from one institution to another and was not properly medicated for his bipolar II condition. (Undersigned counsel filed civil lawsuits directed towards stabilizing Mr. Campillo's  medical condition

and medications).  As Mr. Campillo's environment and medications were stabilized, so too were his behavioral problems.  For approximately the past 15 years Mr. Campillo has remained "shot" free, with the exception of a minor incident wherein he used another inmate's pin number to place a telephone call.  As Mr. Campillo has remained without any disciplinary problems he has been moved from high security USP's to lower security level FCI's.  He is now at FCI Miami which is a low security federal correctional institution with an adjacent minimum security satellite camp.

d) <u>Family and Community Ties</u>- The commission found that family and community ties are a persistent correlate of post release success.  This is consistent with many scholarly studies suggesting that reentering offenders who have maintained social ties to family and community are less likely to reoffend. See eg. Reentry and The Ties That Bind:  An Examination of Social Ties, Employment and Recidivism, Mark T. Berg and Beth Huebner, Justice Quarterly, volume 28, April 2011.

20. Undersigned counsel is attaching hereto as composite Exhibit "F" numerous letters of support for Mr. Campillo from family members, friends and community leaders. Unfortunately, Mr. Campillo lost both of his parents during his incarceration and has only one remaining sibling.  The letters from his remaining family, including the younger generation, paint a portrait

of a kind and generous man who made a devastatingly stupid and serious mistake over 20 years ago but who will be embraced and cared for in his remaining days upon his release from incarceration.

21. Undersigned counsel has been a practicing criminal defense attorney for 37 years, during which time he has literally represented thousands of clients. Like the Court he has seen the best as well as the worst of human behavior. At the time of Mr. Campillo's original sentencing his trial attorney, Howard Srebnick remarked to the Court that, among all of his clients, he was proud to call Mr. Campillo his friend. Undersigned counsel has known Mr. Campillo for 20 years. During this time, on many occasions, Mr. Campillo, without any expectation of anything in return, has exhibited to undersigned counsel that he is truly a kind, generous and caring man. In 20 years not a single holiday, birthday, anniversary or death has passed without Mr. Campillo making a special effort to telephone, write or send a card to undersigned counsel or his family members. In 2005, when both hurricanes Katrina and Wilma struck Miami, Mr. Campillo was on the phone to undersigned counsel arranging to have friends and family members of his hurricane proof undersigned counsel's home if necessary. After the storms Mr. Campillo was the first person undersigned counsel heard from to make sure he and his family were okay. Undersigned counsel can never condone

12

Mr. Campillo's criminal behavior of over 20 years ago and has expressed that to him on many occasions. Undersigned counsel firmly believes, and hopes this Court does too, that the sum of a man's life should not solely be measured by what he has done on the worst days of his life. Rather, undersigned counsel hopes this Court will consider all of the positive things Mr. Campillo has tried to do to atone for his mistakes.

22. Several years ago undersigned counsel appeared before this Court as co-counsel at a client's sentencing. This Court took its time to carefully listen to every witness and read every letter written on behalf of the Defendant. Although the sentence imposed by this Court was harsher than what everyone had hoped for, undersigned counsel left the courtroom convinced that this Court was sincere in its belief that it had imposed the right sentence and was, nonetheless, grateful for the opportunity to be fully heard. Undersigned counsel is confident that this Court will once again take its time to read the numerous letters submitted on Mr. Campillo's behalf herein. Over 20 years of imprisonment and separation has failed to break the bonds between Mr. Campillo and his family and friends. Surely, that must reveal to this Court that along with the individual who committed the serious crimes for which he has been imprisoned for over 20 years there exists a remorseful, caring man with many positive attributes.

23. Like his trial attorney, Mr. Srebnick, undersigned counsel is also proud to call Mr. Campillo his friend and would urge this Court to reunite his friend with his loved ones as quickly as the law allows.

Respectfully submitted,

SAMEK & BESSER, PA
Lawrence E. Besser, Esq.
1200 Brickell Avenue
Suite 1950
Miami, FL 33131
(305) 577-3873
FBN# 0236268

BY: _____
Lawrence E. Besser, Esq.
Attorney for Andres Campillo

14

## CERTIFICATE REQUIRED BY LOCAL RULE 7

Undersigned counsel has contacted Assistant United States Attorney, Richard Getchell, who was the trial attorney for the government in this case with regard to the relief requested in this Motion, Mr. Getchell has advised undersigned counsel that at the present time he has no position on Mr. Campillo's Motion. Mr. Getchell has advised undersigned counsel that he cannot take any position on Mr. Campillo's Motion until after he has reviewed the Motion, Mr. Campillo's presentence investigation report and the disciplinary record of Mr. Campillo while in the custody of the BOP.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing document (with attachments) on this day 14th day of November, 2014, with the Clerk of the Court using CM/ECF.

Lawrence Besser, Esq.