UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

UNITED STATES OF AMERICA,        )   NO. 92-571-Cr-WDF
                                 )
              Plaintiff,          )
                                 )   Miami, Florida
vs.                              )   February 13, 1996
                                 )
ANDRES CAMPILLO,                 )
                                 )
              Defendant          )
------------------------------)

TRANSCRIPT OF SENTENCING

BEFORE THE HONORABLE WILKIE D. FERGUSON, JR.

APPEARANCES:

For the Plaintiff:        RICHARD GETCHELL, ESQ,

For the Defendant:        HOWARD SREBNICK, ESQ.

Court Reporter:           PAUL HAFERLING

---

THE COURT: It may save sometime, Mr. Srebnick. I have your letters of mitigation in sentencing. I read all those letters.

MR. SREBNICK: I have been provided the addendum to the PSI, which never got to me or to the prosecutor for that matter.

THE COURT: Their response to your objections?

MR. SREBNICK: Yes. Mr. Campillo had not seen it. I am worried about not having this go forward without him reading it over once. I don't know what it says. Did the Court see it?

THE COURT: Yes, I have.

MR. SREBNICK: We did file more recently additional letters in mitigation, which I will summarize for the Court, because I don't believe the Court has had an opportunity to review those. Those were filed either I believe as recently as yesterday, which we not aware that the sentencing would go forward. We rushed them and got to the Court. I will summarize them when the time comes.

At this time I would adopt, incorporate and set forth as my own objections those identified by co-counsel for Hidalgo and for Mr. Olivera.

Would the Court like me to go paragraph by paragraph through the PSI, because there were some

---

factual objections that we made, that the probation officer has not resolved, which don't have anything to do with the computations of the guidelines?

THE COURT: If you want to do them, what significant are those factors?

MR. SREBNICK: Some have to do with the fact that may affect when he is incarcerated, in terms of medical situations, things of that nature.

THE COURT: Okay.

MR. SREBNICK: I will go paragraph by paragraph as they are in the response.

As to paragraph one, we noted that he was acquitted of two counts, that was not included in paragraph one. The probation department has no dispute about that.

That paragraph two relates to the case against Fernando Fernandez which the Court heard about, and I brought to the Court's attention additional criminal activity of Mr. Fernando Fernandez in case No. 93-380-Cr-Marcus. The probation officer has no dispute about that either. We brought that to the Court's attention in assessing roles in the offense which would come up later in my presentation.

Those two matters are without any objection either from the probation department, or I don't believe

---

from the Government either.

Regarding paragraphs 3 through 20, those are the factual statements.

The Court heard the trial. I know the facts set forth in the factual statement are presented in the light most favorable to the Government, and I noted our objection to that, and the Court heard our theory of the case at the trial, particularly during our closing argument.

Regarding paragraph 28, the abduction of Jose Ruiz, which was set forth in paragraph 28, we wanted to make clear that even Mr. Ruiz, the alleged kidnap victim, conceded that Mr. Campillo had no participation in that Ruiz never saw, spoke or met Mr. Campillo. I thought that should be brought to the Court's attention; again with regard for Mr. Campillo's role in the offense, which we will get to shortly.

Paragraph 34, Your Honor, is the paragraph that the Court has already ruled upon regarding the two points, specific offense characteristic for the gun, and I have understood the Court to say the Court's ruling applies to all the defendants, unless the Court needs additional discussion about that, the facts relate to Campillo the same as they do to the other defendants, in that Mr. Campillo was acquitted of the two counts

EXHIBIT "A"

relating to the other guns in the case. He was only convicted of the single gun that was identified as the small .22 caliber gun for which the jury convicted him of the 924C count. Unless the Court has any inclination to revisit that issue, I take it that would be the law of the case.

THE COURT: That would be unless the government shows that it is factually distinguishable.

MR. SREBNICK: Is that something we should take up now for consistency?

THE COURT: Perhaps it would make it easier.

MR. GETCHELL: The two level gun enhancement?

THE COURT: Anything about the facts as pertaining to Mr. Campillo.

MR. GETCHELL: They are different in the sense that Campillo was convicted of using the gun that was pointed at Camejo Rodriguez. He was not present on September 8, at the time his co-defendants possessed the various weapons that they possessed; however, we would adopt the same argument made before that the possession of those firearms by his coconspirator on September 8 was foreseeable to the defendant, particularly in light of his own use of a firearm on that earlier occasion, and that accordingly he should get the two level enhancement for the coconspirators possession of a firearm, which is

MR. SREBNICK: Paragraph 35, the probation department proposes a two level increase for the abduction of Camejo Rodriguez. The Court had heard the arguments that we are adopting regarding the definition of victim and we reassert them, and for appellate purposes we intend to appeal that issue.

As a factual matter, much has been said about the evidence regarding Mr. Campillo's participation in the abduction of Camejo Rodriguez, and let's be sure we segregate the two alleged kidnappings.

It is clear that Mr. Campillo did not participate in the Ruiz kidnapping. Ruiz said so.

With respect to the Camejo kidnapping, the only evidence presented in the Court was from a single witness, Gilberto Morales.

The Court needs to make a preponderance of the evidence finding, and it is the Government's burden to satisfy the Court by a preponderance of the evidence that exactly what Morales said happened. And I think the Court needs to consider what corroborating evidence it heard to satisfy itself that Mr. Campillo participated in that kidnapping. It came from one witness; Gilberto Morales.

The two federal agents who testified in the case did not testify that they observed any of those events. No other co-defendant observed any of those events. The only person who testifies about that is Gilberto Morales. I think the Government, knowing that Mr. Morales brings all the baggage into Court that he brings with his plea agreement, his history of lying, et cetera, understands that that evidence alone does not carry the day for the Government and seeks to corroborate testimony, and for that reason brought the two Federal agents to testify that they had observed Mr. Campillo doing counter surveillance.

They bring Goyriena to testify that Campillo used to possess a small gun, the .22 caliber gun. Whether he identified it by that name, I don't recall, but I know that no one could corroborate the testimony of Gilberto Morales.

What I would ask the Court to do is in assessing this two level increase, the jury convicted Mr. Campillo using or carrying the weapon during the course of the conspiracy. That was corroborated perhaps by Goyriena, but the fact that he was participating in a kidnapping was not corroborated by anyone; and, in deed, Anthony Lopez, the witness who testified about the duct tape and the Colombians, testified nothing about

Mr. Campillo. Mr. Campillo was not present for any of those events. While there is corroboration for the other co-defendants, Hidalgo, co-defendant Olivera, there is no other corroboration at all to substantiate the testimony of Mr. Morales that Mr. Campillo did the single event of kidnapping Cejas.

Mr. Campillo was not present when Mr. Cejas was in a hotel room, duct taped and all those events.

Your Honor, it is the Government's burden by a preponderance of the evidence to satisfy the Court that these two level enhancements applies.

The legal issues we have raised regarding victim. I don't think the Court, based on a single word of an informant, with an ax to grind with Mr. Campillo, as he said so when he said I am programmed for you Mr. Campillo that that is the kind of evidence the Court can rely on, uncorroborated evidence that the Court can rely on in assessing these two points. That would be our position regarding the two level enhancement for the victim related adjustment.

Perhaps the Court would like to hear from the Government on that point.

MR. GETCHELL: The issue being by a preponderance, it means more likely than not the jury found beyond a reasonable doubt that Campillo was guilty

13

counter surveillance by Mr. Campillo on a single day, and that is not the kind of participation that permits a minor role reduction.

I would add that and I realize the Court does not engage in plea negotiations, but there was one of those areas that was flexible in the Government's view before Mr. Campillo went to trial.

Indeed, someone going to trial should not be penalized by role reduction or role enhancement because they have exercised their right to trial.

It might affect other things like acceptance of responsibility, but Mr. Campillo's role in the offense does not change because he went to trial.

I am certain the Government will paint a picture of Mr. Campillo as horrible as they can at this juncture, because he has now gone to trial. It is the same picture they should have been painting if he pled or not pled.

With regard to his participation, again it is the Government's -- well, maybe this is my burden to show that minor role in fairness to the Government.

I think we have, and I have identified for the Court all the participants involved. The two informants. The two codefendants, is four; Mr. Camejo is five. Morales is six. Guirena is. Fernando Fernandez is 8.

14

Tony Lopez nine. An unidentified Colombian is 10.

Those are 10 other people involved in this conspiracy who have intimate involvement in the actual importation and distribution; yet no one can identify a purpose for Mr. Campillo, any money he was going to get from his conspiracy. At most, he is assisting Mr. Hidalgo when the load was missing. That is the testimony.

Guirena's testimony that Goyriena was going to distribute the 400 kilos, the Court knows that is wrong testimony. That is not the way it was. The Government does not adopt that theory. The Court today even discussed that theory.

For those reasons, Your Honor, given the number of participants that we are able to identify; given Mr. Campillo's minor role relative to these codefendants. I think this is exactly the kind of role that the commission had in mind when they were assessing relative culpabilities. I think under these circumstances a minor role adjustment would be appropriate.

THE COURT: Look at page nine, paragraph 24.

MR. SREBNICK: Of the PSI?

THE COURT: PSI. Any of that accepted as a finding of fact?

MR. SREBNICK: I don't accept that. That is

15

what I am saying. The testimony contradicted it. Morales testified that Campillo did not have anything to do with the distribution.

The Colombians were keeping part of the dope, and Morales himself was distributing the rest, and he specifically testified he did not know what Campillo was doing there.

That is why I said we don't agree to these paragraphs. We understand these are the paragraphs set forth by the Government. We objected to them. We object to this characterization for Mr. Campillo's role.

THE COURT: Andres Campillo worked closely with Hidalgo in the conspiracy.

Let me hear from the Government on that opening paragraph.

MR. GETCHELL: First, again, for the record, since counsel has made numerous suggestions about that which is undisputed by the Government, I dispute everything counsel says, since so much is mixed together between what I could agree with and could not agree with. He said I agree with him on things. I don't agree with him, and I don't want to be represented as agreeing with him on this issue.

Our position is that Campillo was, according to Goriena, Hidalgo's partner, and had been in the past

16

Hidalgo's partner in distributing loads of cocaine that were successfully imported into the United States, and Hidalgo brought Campillo into this case, and Campillo intended to bring Goriena in this case in order to distribute some part of the 400 kilo load that was imported.

Much was made by counsel in cross examining Morales regarding Morales' understanding how the load was split, but I dispute that the record is clear as counsel portrays it regarding Morales statement that Campillo, and through Campillo Goriena had nothing to do with the distribution of this cocaine.

Morales did not have knowledge regarding the ultimate party who would be distributing any of the cocaine in this case.

The fact of the matter remains that Goriena's testimony was that Campillo brought him into the case to help distribute the cocaine just as he had done on occasions in the past.

Moreover, the facts show that Campillo was present before the cocaine was lost, and the situation eroded into a desperate situation where Camejo Rodriguez was abducted, but was present at the scene where the load vehicle, the blue van was delivered by Morales to the informant the purpose of receiving the 400 kilos of

17

cocaine.

Additionally, Campillo was present, according to Morales' testimony at the time that Camejo Rodriguez, after the loss of the load, Camejo Rodriguez was brought to Hidalgo to answer for the loss of the cocaine.

The fact that Campillo was present with Hidalgo indicates further that he was Hidalgo's partner and was involved with Hidalgo in whatever plans there were for the distribution of the cocaine.

So while the facts do not support an increase for Campillo in that the evidence, and the Government does not have additional evidence to adduce at this time to seek an aggravating adjustment, neither do the fact as presented in trial indicate that he had only a minor or minimal role.

In essence, the argument of counsel is that Campillo was not involved at all, but there is no evidence to indicate if he was involved that he was involved only in a minor sense, so the neutral role assessed by the probation officer for Campillo's involvement was proper given the evidence that is before the Court at this time, notwithstanding the arguments of counsel.

MR. SREBNICK: My recollection of the testimony, and I won't get into it detail, Goyriena never

18

mentioned the name Hidalgo, to begin with. So there may have been hoping Goyriena would testify to these issues, but that is not what he testified to.

Mr. Campillo was not indicted originally in the case. The case came before the Court for trial nine times and not until then was the indictment superseded.

Then there was some testimony forth coming of his participation on a single day by the agents when they observed him. Then the informant testimony which contradicted one another, and I understand the jury convicted Mr. Campillo. I understand we have to accept the verdict, but the issue still remains, what does the evidence show of Mr. Campillo's role?

Does it show he was Hidalgo's partner? That is testimony that Mr. Getchell thought would be forthcoming. It did not come out, so the Court is left with the record evidence and any testimony that the Court heard. The testimony the Court heard was what it heard.

There is a minimal participant that we are not seeking the four points, because the commission says it is so infrequently given. And there is 3 points the Court can give and my judgment was this was a case that called for the two points.

THE COURT: For purposes of 3B1.2B, minor participant means any participant who is less culpable

19

than most other participants, this section provides a range of adjustment for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant.

If you accept the testimony that Goriena, that he had handled numerous cocaine loads for Campillo in the past, isn't it fair to infer that Campillo is no small fry in this operation?

MR. SREBNICK: I think the issue is the evidence that this fry was in this operation? The issue is not what his participation was in other cases. I think the Court made that point when you were trying to assess Mr. Hidalgo's role about people in Colombia and people pulling the cocaine leads off the floor.

The issue is not what Goriena says Campillo did some other time. The issue is what did Campillo do in this case? What is his role in this case?

I think I will be before Your Honor on another case, but that is not the issue regarding Mr. Campillo's role in this offense.

THE COURT: The person seeking the mitigation, isn't it the burden of Mr. Campillo to show from the record that he was substantially less culpable than the other defendants?

MR. SREBNICK: That's what I thought I was

20

doing by highlighting the roles of other defendants, the ones that went down to the Bahamas, brought the dope back, spending 7 or 8 days involved in locating the dope and negotiating the price, and Morales getting involved with the negotiations and calling the Bahamas, and those people are involved.

The people who are arrested the day the dope was supposed to be there, Campillo is nowhere to be found. He is not participating in the kidnap of Ruiz. He is nowhere to be found other than the testimony of the agents for 10 minutes on a single day, and whatever weight you want to give to the other informant testimony. That was uncorroborated, and contradicted one with the other.

Again, it is only the two levels; not the four; not the 3, but there are eleven, and I add 12, because Joe Iella was involved. I count 12 participants in this conspiracy with greater activity, greater role than Mr. Campillo. 12 others, Your Honor.

THE COURT: The request is denied. I can't say that based on this record it is established that this defendant was substantially less culpable than the other participants.

So if you win on the objection, the specific offense characteristics and the others, the downward

adjustment, minor or minimal participant, that is denied.

MR. SREBNICK: That brings us to paragraph 38 which is a calculation paragraph. That then just changes from 42 to 40.

Under paragraph 40, which is the issue of acceptance of responsibility, the Court will recall that I filed a motion with the court for protective order to provide Mr. Campillo with a limited immunity so he can allocute today and express his remorse. The Court has denied that motion, and the Court has indicated it does not feel that the issue is ripe.

The Court will recall that -- our process in Federal Court, and I think in most state Courts is that the defendant is sentenced before he appeals, and the struggle is how do you advise a client to speak at his sentencing when he has an appeal pending?

So, unfortunately we are not a system where you appeal first, and if you lose then you come before the Court and you allocute. We are a system that is designed that you get sentenced first. Then you appeal, but what happens if you prevail on your appeal? What if the Court finds, that the Court of appeals finds there was something unfair about the trial, that Mr. Mario Rodriguez should have been given immunity or that Gurena's testimony should have been stricken or that

there was what Rule 615 violation?

The problem is that any statement Mr. Campillo makes at this sentencing, the government would argue are admissible against Mr. Campillo at a later trial, at a retrial. And the Government might argue that they are admissible against Mr. Campillo in another unrelated case that he has pending before Your Honor.

So I ask the Court for protective order. Let Mr. Campillo speak, and the Court said that the Court was not in a position to grant that protective order. I let the Court know Mr. Campillo has some things he wanted to say to the Court.

I believe if the Court heard him the Court would consider a reduction for acceptance of responsibility. The probation department has left that to the Court's discretion. Frankly, it's an issue that has come up before in this courthouse, one that will make it way to the Court of Appeals.

THE COURT: What has been the disposition in other Courts?

MR. SREBNICK: Judge Marcus ruled the same way Your Honor did. It is not ripe until -- what Judge Marcus proposed is make your statement, and I will hear it, and if the statement warrants a two point acceptance of responsibility, I will give it, but then if the person

prevails on appeal, we will find out later whether it can be used against that person at the upcoming trial.

Fortunately for my client in that situation, the reversal was complete and the case was dismissed, so there was no retrial, so it did not become an issue. The Eleventh Circuit reversed the conviction outright and dismissed the indictment.

As far as Mr. Campillo's case, I can't predict what relief the Eleventh Circuit will give us. We are left in a position of me having to advise Mr. Campillo to waive his 5th Amendment right before I know what the appellate court will say. That is the problem I have as faced with as a lawyer in advising a client; I don't know how to advise the client under these circumstances.

THE COURT: Let us think it through. Let's suppose I granted him the immunity. If he gives the statement, the Government appeals and advises or reverses my determination on the ability to grant immunity. Immunity is usually reserved for the executive branch, the granting of it, except in rear circumstances.

What makes this such an unusual case where the Courts ought to grant immunity? When I guess that is the argument, if you persuade me and don't persuade the Court of Appeal, you are back to square one.

MR. SREBNICK: The answer to your first

question is why? It is otherwise we are forcing the defendant to trade off one constitutional right for another.

The right to allocute, which has been recognized in the 11th Circuit as a constitutional right has to be given up in order to preserve the 5th Amendment right, and the right to appeal, statutory right.

The answer to your second question is if the Court did grant Mr. Campillo the immunity, then no matter what Court of Appeals would say, I don't think a later Court could use those statements against him in an equitable argument. Those statements would have been involuntary. I think I would have a fairly secure argument under those circumstances that a Federal Judge wearing the black robe told Mr. Campillo go ahead and say it, we will not use it against you, and just because 3 other judges disagreed with Your Honor, I don't think they would hold or a District Court would hold that Mr. Campillo's statements would be used against him at the retrial.

Again, you are right, here I go again giving advisory opinions to my client, because of a system that does not give us the right answer to that question.

How do I get an answer to my client before it gets on appeal? The only way is to ask Your Honor for

the answer.

THE COURT: Still a risky proposition to ask me for an answer that I give to you that would be favorable in light of what the Appellate Court could do, and what the effects of the reversal of my grant might have on your client.

I don't know if the complete relief could be found here.

MR. SREBNICK: I think if the Court granted the immunity, the Government could probably take an immediate appeal.

THE COURT: Grant the immunity?

MR. SREBNICK: The government should take an immediate appeal if it objects to it.

THE COURT: The Court of Appeals could then say the grant of immunity was really an empty exercise, since the defendant did not give any testimony anyway.

MR. SREBNICK: We don't know that until you give the immunity so he can speak. You may not value you the testimony. I can't let him give it until he has some assurance in the Court it will not be used against him.

THE COURT: What are you suggesting, that the grant of immunity and the appeal and a decision before the defendant give his statement?

MR. SREBNICK: I would be comfortable enough

that if Your Honor gives Mr. Campillo immunity today, so that he can allocute, an opportunity to speak today, and that it not be used against him, at least I would advise Mr. Campillo that I feel comfortable enough that that statement would not be used against him in a retrial.

You are right, maybe I would be committing malpractice. I don't know. At least we are having this discussion and Mr. Campillo is having the benefit of the discussion and he may feel differently about it now that Your Honor has made those comments.

I think Your Honor understands the predicament I am in advising my client whether to make a statement, particularly where we have pending motions for new trial that the Court wants fully briefed before it rules on it.

THE COURT: What I am saying to you and you understand it, I guess Mr. Campillo does too, you make it clear to him it is a risky proposition.

Let me hear from the Government.

MR. GETCHELL: There is no authority for the Court to enter judicial immunity at this time. Counsel referred to the Judge Marcus case that Judge Marcus presided in in which Judge Marcus told Mr. Srebnick at that time that the criminal law presents certain difficult choices for defendants in criminal cases, and often when someone who is as zealous an advocate as

Mr. Srebnick, who would believe he has a legal argument that it is up to him to test that legal theory as he did in the other cases with his client, and have the client, based on his advice, and his opinion regarding what the ultimate decision in the issue will be to go ahead and advise that client whether or not he should testify.

Instead, right now, what counsel is suggesting is that the court step in and take on a role to assist counsel in making that difficult decision and remove that burden from him, and allow his client to go ahead and take this perilous step to discuss his role in this case, under a cloak of judicial immunity that may completely be without any affect at a later time.

That I suggest to the Court is an improper step for the Court to take. Rather the proper way, as Judge Marcus outlined to Mr. Srebnick in that other case for an issue to get -- for law to be made on an issue is from the defendant to make the choice today whether or not to give a statement with a view towards acceptance of responsibility, which requires admission of his involvement in the offense, and if such time comes as the issue comes back down for a retrial, or the trial of another case, the Government seeks to use that statement and counsel moves to exclude it, and the statement is admitted, then Mr. Campillo will have an appeal at which

time he can go ahead and create some law, for one thing, using the proper appellate procedures, but also may actually prevail when he makes that law, and thus gain the benefit of whatever reduction the Court may choose to give if he qualifies for a role reduction by making a statement, but who gained the benefit of having a retrial in this court case.

All this is speculative. In the first case Mr. Srebnick did this in his client's conviction got reversed. The condition never came up where it could be made law.

In this case counsel overstates the right of allocution; the stress of the right of allocution and the 5th Amendment, right not to give incriminating statements.

The right of allocution is still available to Mr. Campillo. He can still address the Court regarding the Court's considerations for sentencing, if he wishes not to a address his culpability in this offense that does not affect his right to allocute.

That only affects his right to seek a benefit, not a constitutional right, but a benefit that is provided for under the sentencing guidelines for which he bears the burden of proof, and that is to affirmatively accept responsibility for the offense in this case.

29

That proposition is tested at this point, in any event since the defendant does not want to. Obviously he has Constitutional Rights to think about, but if he truly wants to express his remorse and accept responsibility for this offense, then that decision whether or not to take the risk that Mr. Srebnick is advising him is a risk should be that much easier a decision for him if he truly wanted to express his remorse to the Court, and truly making a statement and accepting his responsibility.

I urge the Court not to step into the position as savior for the difficult decision of the client; that is, the defendant, and Mr. Srebnick and let them work that out for themselves, and falling back on the Court's earlier order denying the request for judicial immunity of any type, and let counsel advise his client and take whatever steps he feels are appropriate under his analysis of the law, and his understanding that the risk that is involved in this case.

THE COURT: I have before me the statute, Criminal Procedure 18 USC Section 6001, and 6602; immunity of witnesses.

I am not sure that this section even applies, but it comes close, and certainly the cases are limit the Court's ability to grant immunity.

30

One or two cases that have allowed it, base it on the assuring of the Government's discriminatory use of immunity to gain a tactical advantage. That is a 1992 Second Circuit case.

I don't see anything else that comes close. You could not make an argument here that the Government is making a discriminatory use of the immunity power, where there is no showing in such cases, never before granted use immunity to a defendant who wished to allocute.

MR. SREBNICK: Are you referring to the Blisit case?

THE COURT: Not Blisit. Bagadar.

MR. SREBNICK: There are a couple of cases that talk about that issue. You will see that in the motion we filed last Friday. That is the area, but you are right, this would be case of first impression.

THE COURT: I would say, for the record, that if I had the power, if I thought I had the power I would exercise it.

MR. SREBNICK: Very well. I take it you don't have it?

THE COURT: That's correct.

MR. SREBNICK: Your Honor, there are a few other factual matters, paragraph 48. It's a

31

typographical error regarding when he was arrested, July of '94, not January of '94.

Also that the revolver in his possession was pursuant to a valid concealed weapons permit to the extent that that matter is at all --

THE COURT: Is that not reflected in the PSI?

MR. SREBNICK: I don't believe so. That would be paragraph 48. These won't have any consequences to the guidelines calculations. For sake of completeness Mr. Campillo would like the Court to be aware of that.

MR. GETCHELL: For the sake of completeness it should say he had a valid concealed weapons permit and has been charged with on that day committing another drug and weapons offense.

MR. SREBNICK: Lawfully possessing it in accordance with a concealed weapons permit.

THE COURT: Do you wish the PSI to be amended to reflect that?

MR. SREBNICK: It talks about the other case, but it does not talk about the concealed weapons permit.

THE COURT: Is there anywhere within the PSI that refers to his possessing a valid weapons permit?

MR. SREBNICK: No, it does not.

THE COURT: Well, it should then. You can make that amendment.

32

THE PROBATION OFFICER: Yes I will.

MR. SREBNICK: There is some confusion in paragraph 48 regarding that other offense that Mr. Getchell was referring to. It talks about 90 kilos from Costa Rica to Miami. Then it talks about --

THE COURT: What paragraph?

MR. SREBNICK: Still on. The previous transportation of 185 kilograms of cocaine. We are aware of the allegations in the 94-400 indictment. I am not aware of this suggestion of 2 other importations. I think it might be a typographical error. I just don't know.

I would concede in paragraph 48 that there was another case that he is indicted in, 98-400 he had that is pending before Your Honor. It alleges a quantity of cocaine that I think is in dispute, but it is one importation; not two.

THE COURT: Any response from the Government on that one?

MR. GETCHELL: I don't have the affidavit filed in that case before me. I would rely on the probation officers accurate rendition of what that affidavit says. It is noted that this paragraph refers to allegations made in the affidavit; specifically, and would ask if that is an accurate rendition by the probation officer.

It should say the same.

MR. SREBNICK: The problem is the complaint of the affidavit is filed in January of '94. We know Mr. Campillo was arrested in July of '94. I am not sure what was being relied upon. That is why I raised that issue.

THE COURT: What do you seek in the way of an amendment or clarification?

MR. SREBNICK: Just that I don't think we should say what the affidavit says. We should say Mr. Campillo was arrested in July of 1994, and that he has a case pending in relation to that arrest, 94-400.

THE COURT: You are specifically opposed to what language.

MR. SREBNICK: 90 kilograms of cocaine, and a previous transportation of 185 kilograms of cocaine.

THE COURT: Was it intended from anything you had of these two separate transactions?

THE PROBATION OFFICER: The information came from an affidavit filed in the case. There is a mention that the second informant met with Mr. Campillo and confirmed that the account regarding the 185 kilogram seizure and the suspicion of other conspirators. That Peter Gomez might have been an informant because he avoided arrest.

THE COURT: This affidavit that you are referring to was filed in case 94-400?

THE PROBATION OFFICER: I have the criminal complaint number, Your Honor, but I believe that is in reference to that case, where Mr. Campillo is charged with Juan Arguada and Sergio Robles.

MR. SREBNICK: That is reflected in paragraph 47 that he is charged in that case.

I don't know where the '92 record came from. This is not going to affect the Court's sentence. It is Just for accuracy.

THE COURT: What I want to know is whether this is a reference to two separate transactions, or part of one or part of one in the same.

MR. GETCHELL: That is two separate transactions. One is currently pending against him, and before Your Honor in a separate indictment. The other is not. Two separate transactions.

THE COURT: One is before the Court by an indictment, and the other one was not indicted?

MR. GETCHELL: Has not been indicted yet.

MR. SREBNICK: The alleged conspiracy was going to involve 185, but only 90 were actually imported, or were going to be imported. This is one of those issues that I am in the dark. I don't represent Mr. Campillo in

that case.

MR. GETCHELL: If the Court makes a finding that that determination will not have a bearing on the sentence, one way or the other, then there is no need to make a correction to the paragraph.

THE COURT: Do you agree that it should not affect the sentencing?

MR. SREBNICK: It should not. For that reason I would strike 48. It is irrelevant to this issue. You already got the information regarding the '94 case in paragraph 47.

THE COURT: Any objection to striking 48?

MR. GETCHELL: I believe it is the probation officer's intent to provide a somewhat accurate description of pending charges against the defendant. So if paragraph 48 is going to be stricken, it should be preserved to the extent it says that the defendant is, according to the allegation in the complaint, the defendant participated in the importation of cocaine from Costa Rica, and at the time of the defendant's arrest on that offense, he was in possession of a fully loaded .22 caliber revolver.

MR. SREBNICK: I have no objection to that, particularly to those allegations in the complaint.

THE COURT: It seems then your suggestion is

the elimination of the second sentence.

MR. SREBNICK: That is fine.

THE COURT: And leave the first and the third sentence in its place.

MR. SREBNICK: That is fine, with the adjustment that the Court already ordered concerning the concealed weapon permit. That would be fine.

THE COURT: Would you accept that, Mr. Getchell.

MR. GETCHELL: Yes.

THE COURT: Just delete the second sentence in paragraph 48.

MR. SREBNICK: That brings us to paragraph 49, regarding the 1966 arrest of Mr. Campillo selling without a license. It is a peddlers violation. I realize it is of no great significance, but Mr. Campillo wanted you to know he was issued a citation. He paid it and was not arrested or detained. I guess the record is so old; they are almost as old as I am.

Since there is no information available, the best thing we can do is tell you it was a peddlers violation. He paid the ticket. That ended the matter.

That brings us to paragraph 50 through 58 is personal matters. The Court I am sure had a chance to review 59, just a small correction regarding his son