37

Chris who is here in Court. The Court will have an opportunity to meet, if the Court has probably read from some of the letters, some of the other matters, Chris has overcome quite a few challenges in his life, although he has not received his college degree as of yet, he is taking special education classes at Miami Dade. I wanted to make the court aware of that. That won't affect the guideline computation.

Paragraph 62, regarding Mr. Campillo's regarding Mr. Campillo's taking part in Chris' development regarding some of the things that Mr. Campillo has assisted Chris with, and the Court will hear more about that.

Paragraph 66, Mr. Campillo has blue eyes; not hazel eyes.

I can confirm that for the Court. I sat next to him for a long time. You can't miss his blue eyes. I don't think there is any dispute about that.

Paragraph 67, regarding some medical conditions, the terminology should be that he is a manic depressive bipolar two. I spelled it out for the probation office on page five of my response.

In paragraph 68, Mr. Campillo has a thyroid condition that needs to be monitored. Those would be my factual requests in making those modifications that don't

38

affect the guidelines. I am not sure if the Government has any objection to those that I just recited.

THE COURT: I think on the last point that is covered in paragraph 68; the last two sentences.

MR. SREBNICK: Yes. He recommended that a thyroid check be conducted every six months. I think you are right.

MR. GETCHELL: It addresses the bipolar two. That is superfluous as well.

MR. SREBNICK: The correct terminology would be manic depressive bipolar two.

The PSI reflects the lithium issue and the Bureau of Prisons is aware of that. It became a problem, if the Court is aware, hopefully it won't be a problem during his incarceration.

THE COURT: Make this one modification here. The 3rd line on paragraph 68, bipolar disorder, add manic depressive.

MR. SREBNICK: Yes. That brings us to paragraphs 88 and 89. The Court has resolved the sentencing issues. That is on page 21, regarding guideline range. We have asserted our objections to that. We do intend to appeal from the denial of those. I think the Court heard the argument. The rest would be mathematical calculations. That I believe leaves us with

39

a level 40 that the Court has calculated which would call for a guideline range of 292 months to 365.

I have raised, Your Honor, certain requests for consideration of departures; keeping in mind that the mandatory minimum is 15 years. It should be 180 months. We are now at a minimum of 292 plus 60, so we are at 352 months, which is considerably in excess of the mandatory minimum.

Mr. Campillo is 48 years old. The mandatory minimum, even if the Court were to depart downward would be 15 years. That would leave Mr. Campillo incarcerated until well past age of 60. I cited for the Court the impressive studies of the vital statistics of the United States. I have attached them to my pleading that express the rate among persons above 60.

The reason I did that was to persuade the Court that perhaps we can fashion a sentence that satisfies the mandatory minimum, but at the same time does not constitute essentially what would otherwise be life imprisonment.

As the Court I think can see now, you look at someone through the microscope of 12 days in a persons life in September of 1992, and we forget about the kinds of hardships people go through, kinds of expenses people go through because life deals them a different hand.

40

Before I suppose we get to allocution, I have some things I would like to say. The Court heard about Mr. Campillo's commitment to the community. His commitment to his family, and the fact that he is of an age where any incarceration at the statutory minimum would essentially insure the Court of a harsh punishment. It would serve the purposes of the specific deterrents. I think it would send enough of a message to our community, but at the same time it would at least provide some hope both to Mr. Campillo and to his family, that he would be able to make some contribution both to himself and to this community, to his son; and to the rest of us. I would ask the court to rule on those departure issues.

THE COURT: I am not sure at this point whether there is a basis for a downward departure that would stand up for appellate review. If there is further allocution, perhaps you ought to go ahead, as it stands right now, in the face of 5H1.6 I see no basis for a downward departure.

MR. SREBNICK: I came across that before. Fortunately it does provide that limited circumstances, if not ordinarily, there is some that are absolutely impermissible. For example, lack of youthful guidance and there are certain ones that are impermissible. This is one where the Court has that one small window to make

that decision.

There is the other matter that I raised in my pleading. It's in the PSI. It has to do with Mr. Campillo's health condition. I know the Court became all to familiar with, because of the problems we had during the trial.

Mr. Campillo is a diagnosed manic depressive and I think the Court is generally aware that that affects peoples judgment and their ability to function. Despite Mr. Campillo's own mental health problems, he has never before found himself in this possession with the exception of a peddlers violation 30 year ago, and people do things in accepting the characterization of Mr. Campillo that the Government will make, you know, I think the Court is aware that people do things for certain reasons. I think if the Court sees Mr. Campillo as someone who made that mistake and turned to the wrong side of the law. There are things that motivate people. I am a son of Cuban immigrants. I understand the hardship that Cuban immigrants faced.

I think the Court does have that window of opportunity here under the facts of this case, given what the court heard today, given the standard of review, the Court would be subject to on appeal. The Court knows from the PSI exactly the kind of commitment Mr. Campillo

has shown to his family, to his community, and perhaps Mr. Campillo would like to say something of a limited nature, given limitations of he can say. I know he may have some thoughts.

THE DEFENDANT: Your Honor, when I woke up this morning, I was so sure that you have given us the oral argument that we were supposed to have today, and all the motions, matters of words I am giving you after you read them. I just felt that I had a very good chance.

I am not really prepared today for sentencing. I know my family is not. I know my attorney is not. I was prepared for something else.

I have a chance to prove to you that the only shred of evidence I suppose that was against me, that the agent testified to which was a picture, either by lying or mistake, I don't know. I had a chance to do that, and for some reason, either you or the Court, I don't know if it is you the person or the law is not giving me that chance.

We have that in writing now. What happened is we can have new evidence that we can prove that what the agent said is incorrect.

We talk about my life. We are not talking about a slap on the wrist or a business you lost an amount of money. We are talking about my life.

I already was incarcerated for year and a half. I refused to do the PSI because I could not admit the guilt that I was charged with. The charges that were brought to me and that the Government say that I was not and they say I was not, so I could not commit myself to say I am guilty to those charges because I am not.

I really don't know if I feel -- it is kind of hard for me after I see my son, and believe me I am not an easy person to and I am not trying to make a big deal out of it, but I don't know if I feel anger or sadness necessary. I believe that I feel sad because I know I have the evidence to prove that I am not given the opportunity to prove the evidence that I am innocent.

It is not the 30 years that I am facing incarceration, because that is what God gave me for the rest of my life. That's what God gave me by doing this, by going to a place, not being guilty for that particular charge, I am destroying my whole family, bunch of families, friends. Justice; I don't know. I was writing here if I can say something, I get up.

Justice; I don't know. I think I will have to look it up again in the dictionary. It is not what I thought, and I have been in this country for 36 years. For all this, I object at the sentencing today. All I can say, my life is in your hands. Next think twice.

Search the truth before it is too late.

MR. SREBNICK: One other incident I thought the Court should be aware of, and it is on page nine of my response. I think one of letters that we have submitted was a report regarding an inmate at the jail. Mr. Campillo has been there a long time.

One of the things that I thought was one of those experiences you never forget in life is that one of his cellmates, after being locked all this time tried to take his own life and tried to hang himself in the middle of the night, and Mr. Campillo saved that man's life, and the gentleman wrote a letter to Your Honor which I think the Court has indicated it read.

I thought that is one of those things there is so much you can do when you are in prison. Mr. Campillo is there to save somebody's life. If that gives the Court an idea of a man who wants to take his own, Mr. Campillo was there to help him.

Let me conclude my remarks by sharing with the Court that I represented Mr. Campillo now since May. I think he was one of my very first client's after leaving the public defenders office. He put a lot of faith in me, and I did the best I could.

After the verdict came in, he called my house and he said -- he told me to keep my head up. I can't

45

say that I have won every case I have tried.  I have not. You don't see many client's saying that.  The first person they blame is their lawyer.  Campillo never blamed me.  I did the best I could, and I tried not to disappoint him.  He has been a remarkable client because he has always been honest with me.  He has always been respectful, and with someone despite all the allegations against him, whether it be in this case or some other case, when I spoke to him about what is important in life; he displayed the needs of his family before anything.  Regardless what we think about the allegations and whether he was involved or was not involved in this particular case, and what the testimony was in this particular case, and I know Mr. Campillo's frustration with the testimony that we heard, because as we knew it was inconsistent with the facts, and that is not before the Court anymore.

I know Mr. Campillo is frustrated, as I was that we could not give it all we had because of certain limitations and we could not take full advantage of the inconsistencies in these informant's testimony, but that is neither here nor there.

I think what is important is that Mr. Campillo has so many good qualities that I can't imagine a sentence anymore than the Court feels its bound to give.

46

I would ask the Court, if it is still in the Court's power, to exercise that power, to impose a sentence that is so harsh, but not one that beyond the 15 years that the Court must give under the statute, one that Mr. Campillo can at least have the hope that he can continue to instill the values in his son and help his son and help his family, and frankly be a friend to everyone he has been a friend to and a friend to me for that matter.  I value my friendship with him, and it would be an honor to represent him in the future.  That is how I feel.

THE COURT:  While you were talking I was listening, but still reading.  I found a list of cases where the trial Court had been reversed for departing downward on the basis of family and community ties, and here are some of the cases.

It may not be unusual, for example, for a drug offender to be a single mother with responsibilities, and absent some extraordinary circumstances, these are only ordinary cases, and United States versus Digert, the Forth Circuit reversed a downward departure, where the Court found that the defendant's personal tragic background and family history warranted it.

Another case, United States versus Thomas, 7th Circuit, a reversal where the Court found only that the

47

defendant was a drug offender was a sole parent of 3 mentally disabled adult children and custodian of a four year old grandson.  That is no basis for departure.

1991, First Circuit, defendants who were parents of a young child were not entitled to a downward departure.  They go on and on.

This is a guideline sentencing, and I have found appellate case law on selected issues.

These kinds of cases, Mr. Srebnick, take a lot out of a criminal lawyer; both the defense and the prosecution, and I have been at it 22 years.  I have seen lawyers admit to burn out.

Justice Kogan, now in the Supreme Court once said after a serious case that he is going to leave the practice of the law and seek other work, because he had nothing else to leave in the courtroom.

I hope you don't reach that point at any time soon, but I think you should feel some comfort in the fact that you had done an excellent job.

The matter was left to a jury, and you know what the sentiment of jurors in cases like these.  They are hard to win.

You may have a point for appeal again on the sentencing, but as with the other defendants, I think there is no basis that I can find in the facts for a

48

downward departure based on family ties.

The guideline range as we indicated before is what?

THE PROBATION OFFICER:  292 to 365 months on counts two and four and 60 months on count six, consecutive.

THE COURT:  After due consideration the Court finds that it is appropriate and sufficient that the defendant be sentenced at the low end of the guideline. It's severe enough.

There is also a recommendation that the defendant is able to pay a fine and what is that based on?

THE PROBATION OFFICER:  It is based on the defendants assets of his home, which is listed for I believe 990 thousand dollars.  Let me find it.  On which he has a mortgage of approximately $650,000.  If he were to sell it for the price of 990 thousand, it would leave him a profit of more or less upwards of a quarter of a million dollars.

MR. SREBNICK:  That house has since been sold to pay debts, among other things, tax liens.  It sold for I believe for approximately 870 thousand dollars.  Tax liens were paid on it, and I know Mr. Campillo is in the process of attempting to retain counsel for the other

case the Court has before it; not to mention the obligations, the family obligations he had to incur while incarcerated for the last year and a half.

I know that his income is about to be terminated by his real estate partners because of his incarceration now that he has been convicted. He will be sentenced, all of his consulting fees and everything he has worked for in the real estate business is about to be extinguished, and he is left with the obligations of Chris who will require full-time financial assistance for the rest of Chris' life.

THE COURT: What was the amount of equity in the home?

MR. SREBNICK: The loan was $680,000. I think the net profit after taxes were paid was approximately 150 thousand dollars. Maybe a little bit less.

It was less than that. There was also a judgment that was levied against the property, the family and the realtors are telling me it was considerably less; about 80,000 with the profit; if you call it profit. But that was the profit at the time. Those have been paying the expenses of Mr. Campillo. That is why he sold the house. He could not afford it anymore.

THE COURT: Is he still using private counsel in the other cases, to your knowledge?

MR. SREBNICK: I don't believe he retained other counsel in the other cases yet. I believe he has been trying to do that. He has now to hire appellate counsel in this case.

MR. GETCHELL: He had retained Mr. Bierman in the other case.

THE COURT: There was a motion to withdraw. There is a recommendation here for a sizable fine. Now I would reduce that recommendation, and order a fine of $15,000.

It is the judgment of the Court that the defendant, Andres Campillo, is committed to the custody of the United States Bureau of Prisons for a term of 292 months as to counts two and four to be served concurrently, and 60 months as to count six to be served consecutive to the term imposed in counts two and four.

Upon release from imprisonment the defendant shall be placed on supervised release for a term of five years as to each of counts two and four to be served concurrently, and as to count six a term of supervised release for a term of 3 years to be served concurrently with the term imposed in counts two and four.

Upon release from the custody of the Bureau of Prisons, within 72 hours, the defendant shall report in person to the probation office in the district to which

he is released.

While on supervised release the defendant shall not commit another Federal, state or local crime and shall be prohibited from possessing a firearm or other dangerous devices; shall not possess a controlled substance. In addition, he shall comply with the standard conditions of supervised release as adopted by the Court.

It's further ordered that the defendant shall pay to the United States a special assessment of $50 as to each counts two, four and six for a total of 250 dollars, which shall be due immediately.

The total sentence in recap; 352 months Bureau of Prisons; five years supervised release. $15,000 fine. $150 assessment. You are about to make a point, Ms. Fortunatto?

THE PROBATION OFFICER: I was going to ask Your Honor if he would enter a ruling regarding Mr. Srebnicks objection which the majority of them at the beginning Your Honor did not rule on them. Your Honor ruled on the enhancement for the two points under role.

THE COURT: Specific offense characteristics, the objection was sustained.

THE PROBATION OFFICER: What I am referring to is the first set of objections of Mr. Srebnick which do

not affect the computation of the guidelines.

THE COURT: You are talking about the facts as presented in the PSI?

THE PROBATION OFFICER: Yes. That would be paragraph number one, paragraph number 2, 3, through 20; 28. Those matters were not ruled on.

THE COURT: I think the only two that I thought significant to warrant an amendment, paragraph one does not show that he was acquitted of certain counts; five and 7 I believe.

THE PROBATION OFFICER: Should I indicate that information in the PSI?

THE COURT: Yes.

MR. SREBNICK: I missed that last.

THE COURT: Paragraph one would be revised to show an acquittal as to counts five and seven.

MR. SREBNICK: Paragraph two was Mr. Fernandez participation in another case involving 100 kilo's of cocaine.

THE COURT: What change needs to be made to paragraph two?

MR. SREBNICK: The fact he was charged with and involved in that other case involving another 100 kilogram load. This would be relevant to the issue of role in an offense.

53

THE COURT: In another case, a case other than this one?

MR. SREBNICK: Yes. Just like Your Honor was concerned --

MR. GETCHELL: I am not aware of Fernando Fernandez being involved --

MR. SREBNICK: He was involved in the facts underlying that case. I know that because Mr. Getchell and I were the lawyers in this case.

MR. GETCHELL: That has no bearing on this offense of this case. None, whatsoever. Including role in the offense.

THE COURT: I don't believe it would have any bearing on the sentence at all; what the involvement of the other --Mr. Fernando Fernandez was not charged in this case, was he?

MR. SREBNICK: He was --I think --

MR. GETCHELL: Charged separately by way of an information in this case, but the case that counsel is referring to was not related to this case has nothing to do with this case.

MR. SREBNICK: The only other one was paragraph 28 regarding Mr. Ruiz kidnap which was undisputed by Mr. Ruiz that Mr. Campillo had nothing to do with it, or the slashing of the tires or anything like that.

54

THE COURT: That was the testimony of Ruiz?

MR. SREBNICK: The kidnap victim, himself, yes.

MR. GETCHELL: The probation officer noted they recite the offense with respect to each PSI for every defendant. They are consistent from PSI to PSI.

The fact that the defendant wants to tailer his PSI to say he was not involved in certain incidents and so forth is not necessary and not germane to the sentencing process. The Court has not aggravated the sentence for any involvement with Ruiz for slashing tires. I don't think it is appropriate to go through it. To treat the PSI in each paragraph in this fashion.

MR. SREBNICK: This is Mr. Campillo's PSI; not Hidalgo; not Olivera. It is not Camajo's, and they put this in there because they use the same paragraph, and I think you are suppose to put in there what is relevant only to Mr. Campillo. This will travel with him from institution to institution. That is my concern.

THE COURT: Just add a sentence and say this defendant, Campillo, was not implicated in the kidnapping or slashing of tires of the victim Ruiz.

MR. SREBNICK: Thank you. One minor thing. They have his name wrong across the street, and I just want to make it clear his name is Andres aldolfo Campillo. They have him as Adolfo Campillo. It becomes

55

a problem when visitors come. It may be a problem when he is called to have him brought over here. I want you to know that because it has been a problem.

THE COURT: Was there ever an a/k/a?

MR. SREBNICK: They have it backwards. They have his middle name. The first name, middle name.

THE COURT: Is that it in the PSI?

MR. SREBNICK: It's correct in the PSI. I want to be sure that it stays that way when he travels from prison to prison. They have them down as Andres Campillo in the PSI. His Middle name is Adolfo, if that means anything to anybody.

THE COURT: How would the change in the PSI alleviate the concerns he has about what happens in the Bureau of Prisons?

MR. SREBNICK: Maybe we should at the top of the first page, United States of America versus Andres Aldolfo Campillo, so that the right PSI goes with the right defendant.

THE COURT: Is there another Andres Campillo that you are aware of?

MR. SREBNICK: Not down here, but there is three in the system.

In his family there are.

THE COURT: Put the middle name, Adolfo.

56

MR. GETCHELL: I would suggest that if the Court is satisfied that that is his legal name, that the judgment and sentence returned filed by Your Honor that will stay with the defendant reflects his full name, Andres Adolfo Campillo.

MR. SREBNICK: No objection.

MR. GETCHELL: That may help resolve the issue. That is if the Court is satisfied that is his correct name. I can't make any representation to that one way or another.

THE COURT: That maybe a question. Do you have anything that would cast doubt on that or does this create any new problems?

THE PROBATION OFFICER: No. I am clear on that issue. There is still the issue of paragraph 3 to 20 that I don't have a notation as to the Court's ruling. The fact that the defense was contesting that a lot of the facts are unknown to Mr. Campillo. I don't know if Your Honor would like me to add something.

THE COURT: I am looking now. I don't believe there is anything significant in those paragraphs.

MR. SREBNICK: Note our objections that we don't adopt any of them pursuant to paragraph 3. This is the statement of the United States through his agent, so we don't need that to be changed.

We want to note our disagreement for purposes of the sentencing hearing. I think that solves the problem.

THE COURT: Note the defendants objection to the accuracy of the statement contained in paragraphs 3 through 20.

MR. SREBNICK: Would Your Honor consider making a recommendation for designation in the Southeast United States; preferably Florida so that Mr. Campillo could have access to his son and the rest of his family?

THE COURT: Certainly. The court will make that recommendation that he be incarcerated in the southeast section; preferably Florida.

MR. SREBNICK: At this time we would insert all the objections that we presented in writing and before the Court and would adopt them unless the Court would like me to restate them. I would like to adopt them. Is that alright?

THE COURT: That is sufficient. Does the Government want to place any objections on the record?

MR. GETCHELL: Just for the record, the objection to the failure of the Court to give the two point enhancement for the firearms of the co-defendants. Nothing other than that.

THE COURT: The defendant has been advised and

I think adequately of his right to an appeal from both the sentence as well as the conviction and judgment. The findings of the PSI are adopted as the Court's findings, except as otherwise corrected, noting the defendant's objections.

MR. SREBNICK: We do now have pending a motion. The Government will respond to now that the sentence has been imposed. Does the Court wish I file a renewed motion so that I can toll the time for the appeal?

THE COURT: I think that would be appropriate.

MR. SREBNICK: That is what I will do, and I will give Mr. Getchell a chance to respond.

I certify the foregoing is a true and correct transcript from the record of the proceedings in the above-entitled matter.

_____          _____
Date                      Official Court Reporter